# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BERISH BERGER, et al., :
    Plaintiff, : CIVIL ACTION
     :
    v. :
     :
RICHARD ZEGHIBE, et al., : No. 08-5861
    Defendants. :

## MEMORANDUM

**Schiller, J.**                                                                        September 24, 2010

On August 2, 2010, the Court entered judgment against Defendants including Eli Weinstein and Pine Projects LLC (the "Weinstein Defendants") following a two-week jury trial. The jury heard evidence describing a number of interrelated business deals between and among Defendants and Plaintiffs. The Court occasionally interrupted the examination of witnesses, including Weinstein, in an effort to maintain the parties' focus on the transactions at issue. The jury found the Weinstein Defendants liable to Plaintiffs in tort, for unjust enrichment, and for promissory estoppel. The jury also found that a contract existed between Weinstein and Plaintiff Berish Berger. The Weinstein Defendants argue in the alternative that the Court should (1) amend or alter the judgment against them to eliminate Plaintiffs' successful tort and unjust enrichment claims, or (2) order a new trial due to comments from the bench during Weinstein's testimony. Presently before the Court is the Weinstein Defendants' Post Trial Motion to Alter or Amend the Judgment and for a New Trial [Weinstein Mot.]. The Weinstein Defendants' Motion will be denied for the reasons stated below.

## I. BACKGROUND

This case arises from a series of real estate transactions between Plaintiffs including Berish Berger and corporate entities associated with Berger (the "Berger Plaintiffs") and Defendants including the Weinstein Defendants. The facts relevant to the present motion are set forth below.

According to the Berger Plaintiffs, the Weinstein Defendants were part of a conspiracy which defrauded them of $36.5 million by inducing Berger to invest in two properties in Philadelphia: a building located at 2040 Market Street, and a parcel of land between JFK Boulevard and the Schuylkill River (the "River City Properties").

Weinstein participated in a December 2006 meeting with Berger in which Weinstein and a number of his co-Defendants presented the River City Properties to Berger as an opportunity for a high-rise development despite the fact that a municipal ordinance imposing a 125-foot height limit on the parcel would make those plans impossible to fulfill. To promote the property, the Defendants worked with architect James Rappoport to prepare designs and to construct models representing possible uses of the site. These designs, including an animated "fly-through" computer model, depicted River City as a collection of skyscrapers up to sixty stories tall. Weinstein also represented to Berger that $51.5 million in bank financing was available for the property.

With respect to the 2040 Market Street property, the Berger Plaintiffs demonstrated at trial that the Weinstein Defendants marketed to them a plan involving the acquisition of the building and subsequent sale of the property's air rights. In furtherance of this scheme, Weinstein and various co-Defendants made it appear that an independent investor was prepared to spend $31 million for the air rights, $3 million more than the purchase price of $28 million.

The Weinstein Defendants thus induced Berger to invest in these projects. Between December 18, 2006, and January 19, 2007, Berger arranged for the transfer of $36.5 million from the accounts of the other Berger Plaintiffs to accounts controlled by Weinstein to complete the acquisitions of the 2040 Market Street and River City Properties. The Berger Plaintiffs ultimately had nothing to show for their investments.

Following a two-week jury trial, the jury found the Weinstein Defendants liable to the Berger Plaintiffs for fraud, conspiracy to defraud, conversion and unjust enrichment. The jury also found Weinstein liable for converting the Berger Plaintiffs' funds, and for promissory estoppel. The jury found that Weinstein had proven that "a contract exists between him and Berger," but did not find Berger liable for breach of contract.

## II. STANDARD OF REVIEW

A motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e) "must rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice." *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). Courts undertaking this analysis examine the trial record and defer to the jury's findings if, drawing all justifiable inferences in the prevailing party's favor, there is a reasonable basis to uphold the verdict. *Bhaya v. Westinghouse Elec. Co.*, 832 F.2d 258, 259 (3d Cir. 1987); *Nissim v. McNeil Consumer Prods.*, 957 F. Supp. 600, 602-04 (E.D. Pa. 1997).

Federal Rule of Civil Procedure 59(a) governs the Weinstein Defendants' request for a new trial. Courts may grant a new trial after a jury verdict "for any reason for which a new trial has

3

heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A court may grant a new trial due to improper conduct by the trial judge if that conduct unfairly influenced the verdict. *Marcavage v. Bd. of Trustees of Temple Univ.*, 400 F. Supp. 2d 801, 804 (E.D. Pa. 2005). The Third Circuit evaluates the propriety of a trial judge's conduct in the jury's presence by weighting the following factors: (1) the materiality of the comments; (2) their emphatic or overbearing nature; (3) the efficacy of any curative instruction; and (4) the prejudicial effect of the comments in light of the jury instruction as a whole. *United States v. Olgin*, 745 F.2d 263, 268-69 (3d Cir. 1984).

## III. DISCUSSION

### A. The Weinstein Defendants' Motion to Alter or Amend the Judgment

The Weinstein Defendants move to alter or amend judgment under Federal Rule of Civil Procedure 59(e), arguing that the jury's conclusion that a contract existed between Weinstein and the Berger Plaintiffs bars the Plaintiffs' tort and unjust enrichment claims. The Weinstein Defendants, however, fail to demonstrate that they are entitled to judgement on these claims.

#### 1. The Berger Plaintiffs' Tort Claims

The Weinstein Defendants argue that the existence of a contract between Berger and Weinstein bars the Berger Plaintiffs' tort claims as a matter of law under the "gist of the action" doctrine. The gist of the action doctrine "precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." *Pediatrix Screening, Inc. v. Telechem Int'l, Inc.*, 602 F.3d 541, 548 (3d Cir. 2010) (citing *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002)). Although the Pennsylvania Supreme Court has not explicitly adopted this doctrine, this Court

4

operates "under the assumption that the gist of the action doctrine is a viable doctrine that will eventually be explicitly adopted by [the] state's High Court." *Id*. (citing *Reardon v. Allegheny Coll.*, 926 A.2d 477, 486 (Pa. Super. Ct. 2007)).

Under the gist of the action doctrine, if fraud claims are "inextricably intertwined" with contract claims, "the gist of the action is contractual, and the fraud claim should be dismissed." *Id*. at 549 (citing *eToll*, 811 A.2d at 20-21). The gist of the action doctrine does not, however, bar fraudulent inducement claims. *Degginger v. Houghton Mifflin Harcourt Pub. Co.*, Civ. A. No. 10-3069, 2010 WL 3491358, at *1 (E.D. Pa. Sept. 2, 2010) (citing *Sullivan v. Chartwell Inv. Partners*, 837 A.2d 710 (Pa. Super. Ct. 2005)). Indeed, fraud in the inducement claims are "much more likely" to arise from fraud which is collateral to—rather than interwoven with—contractual terms. *Air Prods. & Chems., Inc. v. Eaton Metal Prods. Co.*, 256 F. Supp. 2d 329, 341 (E.D. Pa. 2003) (citing *eToll,* 811 A.2d at 17). This case represents a similar instance in which fraudulent misrepresentations, and not merely failure to perform under a contract, entitles the Berger Plaintiffs to relief in tort notwithstanding the existence of a contract between the parties.

The Weinstein Defendants claim that but for Weinstein's contractual obligations to Berger, "Weinstein would owe no obligations to plaintiffs." (Weinstein Mot. at 3.) This argument ignores the evidence that there would be no contract but for Weinstein's efforts to induce Berger to commit the Berger Plaintiffs' funds to his projects. The jury considered evidence documenting the Weinstein Defendants' fraudulent misrepresentations prior to formation and beyond the bounds of any contract between the parties, including:

- Weinstein's role in arranging and participating in the December 6, 2006 meeting at which Defendants presented Berger with development plans they knew to be barred

by Philadelphia's zoning code;

- Weinstein's representation to Berger that $51.5 million in bank financing was available for the purchase of River City;

- The Weinstein Defendants' representation to Berger that Berger's funds were needed to purchase the 2040 Market Street property's air rights, and the value of those air rights.

(Plaintiffs Opp'n to the Weinstein Defs.' Mot. to Alter or Amend the J. and for a New Trial at 6-7. [Berger Opp'n]) The jury thus could reasonably conclude that the Weinstein Defendants fraudulently induced Berger's agreement to do business with them. Such misrepresentations were collateral to whatever contract existed between Berger and Weinstein and therefore fall beyond the reach of the gist of the action doctrine. The Weinstein Defendants' motion will thus be denied with respect to the Berger Plaintiffs' tort claims.

## 2. The Berger Plaintiffs' Unjust Enrichment Claim

The Weinstein Defendants argue that the jury's finding that a contract existed between Berger and Weinstein bars the Berger Plaintiffs' unjust enrichment claim. As the Weinstein Defendants correctly observe, Pennsylvania law bars unjust enrichment claims "if there is an express contract on the same subject." *In re Penn Central Transp. Co.*, 831 F.2d 1221, 1230 (3d Cir. 1987). Nevertheless, when a party performs services "wholly outside the scope of the contract," the existence of that contract will not bar a claim for unjust enrichment. *Drysdale v. Woerth*, 153 F. Supp. 2d 678, 687 (E.D. Pa. 2001) (citing *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987)).

The Court's analysis thus hinges on the scope of the contract between Berger and Weinstein.

6

The jury made no findings as to the terms or subject matter of the contract. The Court must therefore look to the record and determine whether, drawing all justifiable inferences in the Berger Plaintiffs' favor, the verdict may stand as a matter of law.

Berger and Weinstein both testified at trial that Berger agreed to invest $21.5 million of the Berger Plaintiffs' funds in the River City and 2040 Market Street Properties. As $36.5 million of the Berger Plaintiffs' money is at issue in this case, $15 million would be outside the scope of the contract between Weinstein and Berger. The judgment as to the Berger Plaintiffs unjust enrichment claim thus survives the Weinstein Defendants' motion to alter or amend the judgment.

### B. The Weinstein Defendants' Motion for a New Trial

The Weinstein Defendants argue in the alternative for a new trial on the grounds that the Court "fundamentally prejudiced Weinstein's defense by overtly impugning his credibility in the presence of the jury." (Weinstein Mot. at 1.) The Weinstein Defendants also assert that the Court's instructions to the jury could not have cured this error. (*Id*. at 9.) The Court thus examines both its remarks during Weinstein's testimony and its instructions to the jury at the conclusion of the trial.

#### 1. The Court's Remarks

The Weinstein Defendants take issue with the Court's remarks to counsel in the presence of the jury while Weinstein was on the stand. Specifically, they object to the Court's alleged characterization of Weinstein's testimony as "what happened somewhere else as a figment of imagination," in a "parallel galaxy." (Trial Tr. 224, July 26, 2010; Weinstein Mot. at 8.) The Weinstein Defendants also complain that the Court improperly characterized Weinstein's activities as "all a plan, a scheme, an artifice." (Trial Tr. at 228; Weinstein Mot. at 8.)

7

The Weinstein Defendants accurately note that Weinstein was describing a transaction involving property at 900 Delaware Avenue when the Court interrupted his attorney. (Weinstein Mot. at 8-9.) The Court's remarks were intended to ensure counsel remained within the bounds of cross examination and that she "focus on this deal and this lawsuit." (Trial Tr. at 224) Although the Weinstein Defendants describe the Court's conduct as an assault on Weinstein's testimony, a review of the trial transcript reveals that these remarks were primarily directed at Weinstein's counsel, not at Weinstein. (*Id*. at 224-25, 228.) Read as a whole, it is clear that the comment in question was intended for Ms. Ainslie, Weinstein's attorney:

> "I've been letting you stray off into a parallel galaxy here and I'm a little upset about it. I want you to focus on this deal and this lawsuit. I don't want to hear about what happened somewhere else as a figment of imagination or thought or whatever."

(*Id*. at 224) The Berger Plaintiffs and other defendants including Weinstein's associates Ravinder Chawla and Richard Zeghibe agree that this directive represented the Court's normal practice with respect to all parties, and that it was appropriate under the circumstances. (Berger Opp'n at 9; Resp. of Defs. Ravinder Chawla, World Acquisition Partners Corporation, 2040 Market Associates, LP, JFK Blvd Acquisition Partners, L.P., and Richard Zeghibe to Defs., Eli Weinstein and Pine Projects, LLC's Post-Trial Mot. to Alter or Amend the J. and for a New Trial at 3.)

The Court's comments thus did not prejudice Weinstein. Rather, the Court's actions reflect the reality that judges shoulder trial-management responsibilities beyond "simply ruling on objections and charging the jury." *Tann v. Serv. Distribs., Inc.*, 56 F.R.D. 593, 601 (E.D. Pa. 1972). In conducting a trial, it is the court's duty "to see that the issues are not obscured and that the testimony is not misunderstood." *Id*. (citing *Cromling v. Pittsburgh & Lake Erie R.R.*, 327 F.2d 142,

8

151-52 (3d Cir. 1963)). *See also Kennedy v. Lankenau Hosp.*, Civ. A. No. 97-5631, 2000 WL 1367998, at *6-8 (E.D. Pa. Sept. 12, 2000). Complex and lengthy trials in particular require the Court to exercise its discretion to keep the parties focused, ensuring that the issues are clearly presented to the jury. *See United States v. Pisani*, 773 F.2d 397, 402 (2d Cir. 1985).

The Weinstein Defendants attached an audio recording to emphasize the allegedly emphatic and overbearing nature of the Court's comments during Weinstein's testimony. (Weinstein Mot. at 8-9.) Nevertheless, the Weinstein Defendants fail to show that the Court's comments were overbearing given the amount and character of the testimony introduced against Weinstein. As Plaintiffs observe, the jury heard "exhaustive" evidence over the course of the two-week trial, including evidence which depicted Weinstein as a "liar and a cheat." (Berger Opp'n at 9.) To the extent the Court's comments were directed at Weinstein himself, they represented a small drop in the ocean of information presented to the jury on this point. *See United States v. Beaty*, 722 F.2d 1090, 1094-95 (3d Cir. 1983) ("The sheer length of this two week trial makes us cautious about investing any but the most inflammatory isolated statements with critical importance. We do not believe that a few summary questions or intemperate remarks assumed the same importance in the jury's mind as they naturally have in counsel's while preparing this appeal."). The Weinstein Defendants thus fail to demonstrate that the Court's remarks were so overbearing or emphatic that they justify ordering a new trial.

2. *The Court's Jury Instructions*

If the Weinstein Defendants had shown that the Court's comments prejudiced Weinstein's defense, any such error was cured by the Court's instructions.

The Court instructed the jurors no fewer than four times that the jury is the sole determiner

of credibility and fact. Jurors are presumed to have followed the trial judge's instructions "unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the impact of the evidence would be devastating to the defendant." *United States v. Vaulin*, 132 F.3d 898, 901 (3d Cir. 1997). The Weinstein Defendants contend that "no instruction possibly could have cured the damage done to Weinstein's credibility." (Weinstein Mot. at 9.) The prejudicial effect of a comment from the bench is only uncorrectible in the most extreme, egregious circumstances. *See Olgin*, 745 F.2d at 269-70. The comments at issue in this case do not approach this standard.

The Weinstein Defendants suggest that the Court's instructions may also have been too general or abstract to provide a sufficient remedy. It is noteworthy that although the Weinstein Defendants had a copy of the Court's charge for review from the first day of trial, the Parties requested no additional instructions on this point. The Court therefore concludes that any error which may have resulted from its comments was cured by its instructions to the jury.

## IV. CONCLUSION

The Court will thus deny the Weinstein Defendants' Post Trial Motion to Alter or Amend the Judgment and for a New Trial in its entirety. An Order consistent with this Memorandum will be docketed separately.